IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN BARGER,
      Petitioner,

vs.                                 Case No.:  3:12cv185/RV/EMT

MICHAEL D. CREWS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 12).  The court provided Petitioner an opportunity to file a reply (*see* doc. 13), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

---

[1] Michael D. Crews succeeded Kenneth S. Tucker as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 12).[2] Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2008-CF-2919, with one count of resisting an officer with violence (Count 1), one count of possession of a controlled substance (less than 20 grams of cannabis) (Count 2), and one count of driving while license cancelled, suspended, or revoked (Count 3) (Ex. B). He entered a written Plea and Sentencing Agreement, pursuant to which the parties agreed he would plead nolo contendere to the charges, adjudication of guilt would be withheld, and he would serve two (2) years of probation (Ex. D). On August 4, 2009, the trial court entered an order of probation placing Petitioner on probation for two (2) years on Count 1, a concurrent term of one (1) year of probation on Count 2, and a concurrent term of six (6) months of probation on Count 3 (Ex. D).

On October 14, 2009, Petitioner was charged in Circuit Court in and for Okaloosa County, Florida, Case No. 2009-CF-1949, with one count of battery upon a family or household member (Count 1), one count of violation of an injunction for protection against domestic violence (Count 2), and one count of resisting an officer without violence (Count 3) ("new law violations") (Ex. F). Petitioner was also charged with three counts of violating his probation in Case No. 2008-DF-2919, by violating Condition (5), which required him to live and remain at liberty without violating any law ("VOP") (Ex. G). Petitioner entered a written Plea and Sentencing Agreement, pursuant to which the parties agreed he would plead nolo contendere to the VOP and the new law violations, adjudication of guilt would be at the discretion of the court, sentencing would be at the discretion of the court after a pre-sentence investigation, any prison sentence would be capped at seven (7) years and split between the VOP and new law violations, and he would receive credit for time served (Ex. H). The court accepted the plea (Ex. I). At the sentencing hearing on February 5, 2010, the State requested that Petitioner be designated a violent felony offender of special concern, pursuant to Florida Statutes § 948.06 (Ex. J). The court adjudicated Petitioner guilty of the VOP and the new law violations and designated him a violent felony offender of special concern (Ex. J at 64, Ex. L). As to the new law violations, the court sentenced Petitioner to sixty (60) months of imprisonment

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 12). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

on Count 1, with pre-sentence jail credit of 133 days, and time served on Counts 2 and 3 (*id.*). In the VOP case, Petitioner was sentenced to a term of twenty-four (24) months of imprisonment on Count 1, with pre-sentence jail credit of 138 days, to run consecutively to the sentence for the new law violations, and time served on Counts 2 and 3 (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-805 (Ex. N). Petitioner voluntarily dismissed the appeal, and the First DCA dismissed the case on April 30, 2010 (Ex. O).

On October 3, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. P1). In an order rendered November 23, 2010, the state circuit court dismissed the motion, on the ground that it was not sworn (Ex. P3).

On December 12, 2010, Petitioner filed a second Rule 3.850 motion (Ex. Q1). The state circuit court partially granted the motion and directed the clerk of court to enter an amended judgment removing the habitual felony offender of special concern designation (Ex. T). The court otherwise denied the motion (*id.*). The clerk of court amended the judgment on May 23, 2011, to remove the designation (Ex. U). Petitioner appealed the state circuit court's decision to the First DCA, Case No. 1D11-3078 (Ex. V). The First DCA affirmed the judgment per curiam without written opinion on August 26, 2011, with the mandate issuing September 21, 2011 (Ex. W). <u>Barger v. State</u>, 68 So. 3d 236 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on April 15, 2012 (doc. 1). Respondent does not assert a statute of limitations defense (*see* doc. 12 at 2–6).

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

      (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

            (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

            (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

Ground One: "Trial court error—Double Jeopardy."

Petitioner contends his convictions of felony battery and violation of an injunction for protection against domestic violence, a violation of Florida Statutes § 784.03(1), (2) and § 741.31, respectively, violated the prohibition against double jeopardy (doc. 1 at 4).

Respondent concedes Petitioner raised this claim in his Rule 3.850 motion, and the state court adjudicated the merits (doc. 12 at 12–13). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 14–16).

1.      Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306, 104 S. Ct. 1805, 1812, 80 L. Ed. 2d 311 (1984).  This guarantee is applicable to the states through the Fourteenth Amendment.  *See* Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).  The Double Jeopardy Clause embodies three separate guarantees:  "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense."  Justices, 466 U.S. at 307–08 (citation and footnote omitted).  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); Whalen v. United States, 445 U.S. 684, 689, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); Albernaz v. United States, 450 U.S. 333, 344, 101 S. Ct. 1137, 1145, 67 L. Ed. 2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed.  Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution.").

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense."  Garrett v. United States, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985)).  Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so "'in the absence of a clear indication of contrary legislative intent.'"  Hunter, 459 U.S. at 366 (quoting Whalen, 445 U.S. at 691–92); *see also* Garrett, 471 U.S. at 779 (holding that multiple punishments are permissible "when the legislative intent is clear from the face of the statute or the legislative history"); Ohio v. Johnson, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8, 81 L. Ed. 2d 425 (1984) ("[I]f it is evident that a state legislature intended to

authorize cumulative punishments, a court's inquiry is at an end." (emphasis added)).  If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993).  Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes.  Hunter, 459 U.S. at 368.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Claim I in his Rule 3.850 motion (Ex. Q1 at 12–15).  The state circuit court adjudicated the claim as follows:

> **Ground I**—The Defendant first alleges that his convictions for felony battery and violation of an injunction for protection against domestic violence violate his right to be free from double jeopardy.  The Court finds that the two offenses are distinct and that each contains an element that the other does not.  The prohibition against double jeopardy does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts.[FN 3: Bailey v. State, 21 So. 3d 147 (Fla. 5th DCA 2009)].  Since no double jeopardy issue exists, this claim is denied

(Ex. T at 135).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis.  First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct.  If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply.  If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of Blockburger.  Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996).

The language of the Florida criminal statutes defining felony battery and violation of an injunction for protection against domestic violence provide no answer to the question of whether the Florida legislature intended to impose cumulative punishments for the same conduct. *See* Fla. Stat. §§ 784.03, 741.31(2009). Therefore, the court will look to Florida's rules of statutory construction. The version of those rules in effect at the time Petitioner committed the criminal offenses provided, in relevant part:

775.021. Rules of construction

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
. . . .
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2009). Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule. Fla. Stat. § 775.021(4)(b). The exceptions adopt the <u>Blockburger</u> test. *See* <u>State v. Weller</u>, 590 So. 2d 923, 925 (1991).

Petitioner has failed to show that the offenses in the instant case satisfy the first exception. At the time of Petitioner's offense conduct, September 26, 2009 (*see* Ex. F), the offense of felony battery had the following two elements:

> 1. the defendant actually and intentionally touched or struck the victim against her will; and

> 2. the defendant had one prior conviction for battery, aggravated battery, or felony battery.

*See* Fla. Stat. § 784.03(1), (2).

The offense of violation of an injunction for protection against domestic violence had the following two elements:

> 1. a temporary or final injunction for protection against domestic violence was issued by a court against the defendant; and

> 2. the defendant willfully violated the injunction by committing an act of domestic violence against the petitioner.

*See* Fla. Stat. § 741.31(4)(a)4. Domestic violence is defined as any assault, aggravated assault, battery, aggravated battery, false imprisonment, or any criminal offense resulting in physical injury of one household member by another household member. *See* Fla. Stat. § 741.28(2).

The offense of felony battery required proof that Petitioner had one prior conviction for battery, aggravated battery, or felony battery, which is not an element of the crime of violation of an injunction for protection against domestic violence. Further, the crime of violation of an injunction for protection against domestic violence required proof that a temporary or final injunction for protection against domestic violence was issued by a court against the defendant, which is not an element of felony battery. Therefore, the first Blockburger exception does not apply to Petitioner's sentences for these offenses. Furthermore, the second exception is not satisfied because neither of the crimes is a degree of the other. Finally, the third exception is not satisfied because violation of an injunction for protection against domestic violence is not a lesser included offense of felony battery, and felony battery is not a lesser included offense of violation of an injunction for protection against domestic violence.

Petitioner failed to demonstrate that the state court's adjudication of his double jeopardy claim was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground One.

B.    Ground Two: "Involuntary plea—violation of plea agreement"

Ground Three: "Ineffective assistance of counsel"

Ground Five: "I.A.C. misstated sentence"[4]

In Grounds Two, Three, and Five, Petitioner alleges (1) the trial court's sentencing him as a Violent Felony Offender of Special Concern ("VFOSC"), pursuant to Florida Statutes § 948.06(8), violated the terms of the plea agreement, (2) defense counsel misled him as to the terms of the plea agreement by failing to advise him he would be sentenced as a VFOSC, and (3) defense counsel misstated Petitioner's sentence (doc. 1 at 4–6).

Respondent concedes Petitioner "appears to have exhausted" the claim alleging the trial court breached the plea agreement; however, Respondent expressly states the State does not waive exhaustion as to this claim (doc. 12 at 18 & n.6). Respondent contends the state court correctly found that Petitioner's sentence of consecutive terms of sixty (60) months and twenty-four (24) months in the DOC for Cases 2009-CR-1949 and 2008-CR-2919, respectively, complied with the terms of the negotiated plea agreement, which called for a "cap" of seven (7) years of imprisonment (*id.* at 18). Respondent contends that although the state court did not address Petitioner's claim that his designation as a VFOSC was not in compliance with the terms of the plea agreement in its analysis of Petitioner's breach-of-plea-agreement claim, the court addressed that issue in its analysis of Petitioner's ineffective assistance of counsel claim, and determined that the VFOSC designation was not in compliance with terms of the agreement (*id.* at 18–20). Respondent contends the state court essentially granted relief on both claims in the form of specific performance of the plea agreement, by ordering removal of the VFOSC designation from the judgment and sentence (*id.* at

---

[4] Petitioner set forth four separate grounds for relief on pages 4 and 5 of his petition, which he identified as Ground One, Ground Two, Ground Three, and Ground Four (doc. 1 at 4–5). In the section of the petition form which provides an opportunity to set forth additional grounds, Petitioner stated three additional grounds, which he did not identify by number (i.e., Ground Five, Ground Six, Ground Seven) (*id.* at 6). The court will refer to the additional grounds as Ground Five, Ground Six, and Ground Seven (and will discuss Grounds Four, Six, and Seven in the following sections of this Report). The State did not address the additional grounds in its answer to the petition.

20–24).[5]  Respondent asserts Petitioner's sentence was not otherwise affected by the VFOSC designation, thus the state court's remedy brought Petitioner's sentence in compliance with the terms of the valid plea agreement (*id.*).  Respondent did not address Ground Five, which Petitioner asserted as an unidentified additional ground for relief on page 6 of the habeas petition.

        1.      Clearly Established Federal Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) applies. *See* Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).  To obtain relief under Strickland, Petitioner must establish:  (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances."  *See* Strickland, 466 U.S. at 691.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel

---

[5] Respondent notes that the state court judge who granted postconviction relief on Ground Three was a different judge than the judge who presided at Petitioner's sentencing (doc. 12 at 24 n.8).

must predict how the facts, as he understands them, would be viewed by a court. . .
. Questions like these cannot be answered with certitude; yet a decision to plead
guilty must necessarily rest upon counsel's answers, uncertain as they may be.
Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably
competent attorney will turn out to be mistaken either as to the facts or as to what a
court's judgment might be on given facts. That a guilty plea must be intelligently
made is not a requirement that all advice offered by the defendant's lawyer withstand
retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded
of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under
this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty
when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent
such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct
fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474,
477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea
bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make
a wise decision" without assistance of counsel or a "bad one despite superior advice from his
lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel
owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the
former case counsel need only provide his client with an understanding of the law in relation to the
facts, so that the accused may make an informed and conscious choice between [entering a plea] and
going to trial." Id. This requires counsel to "offer his informed opinion as to the best course to be
followed" and impart "a general knowledge of the possible legal consequences of facing trial" to
the defendant. Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering
into his decision" does not undermine a validly entered guilty plea. Id. at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must
establish that prove that "counsel's constitutionally ineffective performance affected the outcome
of the plea process." Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of
the error would have led counsel to change his recommendation as to the plea, which in turn
generally depends on whether the outcome of a trial would have been substantively different. Id.

at 59–60. While counsel can be deemed ineffective under <u>Strickland</u> for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See* <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under <u>Strickland</u>. *See* <u>Diaz</u>, 930 F.2d at 835; *see also* <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the State, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the State's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See* <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

The clearly established federal standard for claims of breach of a plea agreement is set forth in <u>Santobello v. New York</u>, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. The Supreme Court outlined two remedies available to rectify the government's breach of a plea agreement: (1) rescission of the agreement, that is, withdrawal of the guilty plea, or (2) specific performance of the agreement, "in which case petitioner should be resentenced by a different judge." 404 U.S. at 263; *see also* <u>Puckett v. United States</u>, 556 U.S. 129, 137, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). "[A] breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." <u>Puckett</u>, 556 U.S. at 137–38 (emphasis in original).

The choice of remedies is within the sentencing court's discretion. *See* <u>Santobello</u>, *supra*; <u>United States v. Al-Arian</u>, 514 F.3d 1184, 1190 (11th Cir. 2008) (citing <u>Santobello</u>). However,

specific performance of the agreement, as opposed to withdrawal of the guilty plea, is the favored remedy in the Eleventh Circuit. *See* United States v. Johnson, 132 F.3d 628, 631 (11th Cir. 1998) (citing Santobello); United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992) (citing Santobello). Furthermore, "[s]pecific performance is particularly appropriate where [ ] no question exists that the plea was knowingly and voluntarily entered." Johnson, 132 F.3d at 631 (citing United States v. Tobon-Hernandez, 845 F.2d 277, 280–81 (11th Cir. 1988)). Florida courts also follow the rule that the sentencing court must assess the remedy due for the breach, either specific performance or withdrawal of the plea. *See* Hunt v. State, 613 So. 2d 893, 899 (Fla. 1992). Tillman v. State, 522 So. 2d 14 (Fla. 1988). Some Florida appellate courts follow the rule that a defendant's choice of remedies should be followed, especially where the other remedy would not remedy the defendant's loss (*see* McCullough v. State, 974 So. 2d 1214, 1218 (Fla. 2d DCA 2008); Mehl v. State, 958 So. 2d 465, 468 (Fla. 4th DCA 2007); Buffa v. State, 641 So. 2d 474, 475 (Fla. 3d DCA 1994); Spencer v. State, 623 So. 2d 1211, 1213 (Fla. 4th DCA 1993)); however, the Florida Supreme Court has followed the rule that withdrawal of the plea is not the proper remedy where the plea is otherwise shown to be voluntary (*see* Hunt, Tillman, *supra*; *see also* Mehl, *supra*.).

  2.  Federal Review of State Court Decision

Petitioner raised his claims as Claims II, III, and VIII in his Rule 3.850 motion (Ex. Q1 at 18–22, 29–30).[6] He argued he was entitled to withdraw his plea as a result of the alleged

---

  [6] In Claim II, Petitioner asserted the terms of the plea agreement provided that sentencing would be at the court's discretion, but it would be capped at seven (7) years and divided between both cases (the VOP case and the new law violations case) (Ex. Q1 at 16–17). Petitioner asserted the prosecutor violated the terms of the agreement at sentencing by requesting that Petitioner be designated a VFOSC and advising the court that if Petitioner was so designated, the court was required to impose an incarcerative sentence if the court found that he posed a danger to the community (*id.* at 16–17). Petitioner asserted the sentencing judge designated him a VFOSC and stated "as such, supervision is not appropriate." (*id.* at 17). The court then imposed the seven-year sentence, split between the two cases. Petitioner argued he should have been allowed to withdraw his plea in light of the prosecutor's and court's failure to honor the terms of the plea agreement (*id.* at 16–18).

  In Claim III, Petitioner asserted defense counsel advised him that if he entered the plea agreement, he would be sentenced at the court's discretion, but the sentence would be capped at seven (7) years and split between the VOP and the new law violations (Ex. Q1 at 18). Petitioner claimed that defense counsel failed to advise him he would be sentenced as a VFOSC (*id.*). He asserted had he known he would be designated a VFOSC, he would not have entered the plea and instead would have proceeded to trial (*id.* at 19–20).

  In Claim VIII, Petitioner asserted defense counsel misadvised him that if he entered the plea agreement, the court would sentence him to incarceration on the VOP and only probation on the new law violations (Ex. Q1 at 29). He

constitutional errors (*id.*).  The state circuit court adjudicated the claims as follows:

> **Ground II**—The Defendant next claims that the trial judge did not honor the terms of the negotiated plea agreement.  This claim is without merit as it is contradicted by the record.  As noted, the plea agreement called for a cap of seven (7) years imprisonment.[FN 4:  Plea agreement, attached as Exhibit B.]  The Defendant received a sentence of sixty (60) months DOC in case 09-CF-1949 to run consecutive to a twenty four (24) month sentence in case 08-CF-2919, which was the maximum term allowed by the agreement.  Since the Court sentenced the Defendant consistent with the negotiated plea, this claim is denied without the need for an evidentiary hearing

> **Ground III**—The Defendant next claims that his attorney misadvised him with respect to the terms of the plea agreement.  According to the Defendant, he wanted to contest the charges and proceed to a trial and would not have entered the plea had he been aware that he was designated as a Habitual Violent Felony Offender (HFVO).[7]

> The State did not include in the written plea agreement that it was seeking to have the Defendant sentenced as [a Violent Felony Offender of Special Concern].  Although the State proved to the Court's satisfaction that the Defendant qualified as [a Violent Felony Offender of Special Concern] at sentencing, the Defendant was never told that he would be labeled as such upon entering the plea.  Since the Defendant was not informed of this consequence, it was error to designate the Defendant as [a Violent Felony Offender of Special Concern] even though he qualified for the enhancement.[FN 5:  <u>Pitts v. State</u>, 766 So. 2d 1191 (Fla. 5th DCA 2000)].  As a result, the portion of the judgment and sentence designating the Defendant as [a Violent Felony Offender of Special Concern] must be stricken so that the terms of the original plea agreement are honored.
> . . . .
> **Ground VIII**—The Defendant argues that his trial attorney erred in misinforming him with respect to his plea agreement.  As noted in the plea agreement and again at the plea colloquy, the Defendant was specifically informed that he was facing a maximum sentence of seven years DOC by entering a plea of no contest.  This ground, accordingly, is denied without an evidentiary hearing.

(Ex. T at 136–38).  Petitioner appealed the decision to the First DCA, and the appellate court

---

also asserted counsel never advised him he could be sentenced as a VFOSC (*id.*).  Petitioner asserted had counsel not misadvised him as to how the court would sentence him, he would have accepted the State's alternative offer of a "guidelines" sentence of 4 1/2 years (52.2 months) of imprisonment (*id.* at 30).

[7] The state court mistakenly referred to the designation as Habitual Violent Felony Offender, instead of Violent Felony Offender of Special Concern.

affirmed the lower court's decision without written opinion (Ex. W).

The state court record demonstrates Petitioner was scheduled for an evidentiary hearing on the VOP on December 29, 2009 (Ex. I). Petitioner's counsel, Attorney Haug, announced that the defense originally intended to proceed with the evidentiary hearing, but the parties were discussing their options, in light of the fact that the victim requested that the State drop the domestic violence charge, but the State indicated it would still proceed on the charge, and Petitioner scored 52 months in prison according to the Criminal Punishment Code (*id.* at 47). The prosecutor stated the State agreed to either of the following: (1) Petitioner would enter a plea to the charges and the parties would agree to a sentence of 52.2 months of incarceration in the DOC, or (2) Petitioner would enter a plea to the charges and Petitioner's sentence would be at the discretion of the court, but the parties would agree that the sentence would be "capped" at seven (7) years of incarceration in the DOC (*id.* at 47–48). The prosecutor stated, "This defendant is a violent felony offender of special concern. His record is a mile long including three robberies and attempted robbery." (*id.* at 48). Attorney Haug requested a recess, after which he announced that he and Petitioner had reviewed a plea agreement (*id.* at 49). Attorney Haug announced Petitioner wished to enter an admission to the VOP and plead no contest to the new charges, with the agreement that a presentence investigation would be conducted and a sentencing hearing set, and Petitioner's sentence would be capped at seven (7) years in the DOC with credit for time served (*id.* at 50). Petitioner was sworn, and the court questioned him with regard to the plea agreement as follows:

> THE COURT: And did you have a chance to go over the plea agreement with your lawyer and ask questions and get legal advice to satisfaction?

> MR. BARGER: Just now we talked about it.

> THE COURT: Pardon me?

> MR. BARGER: We just now talked about it.

> THE COURT: Are you satisfied with the legal advice you got or do you need more time?

> MR. BARGER: I ain't [sic] want to sign a cap at this time. What—I don't have no intention on [sic] fighting the violation. That's what I was trying to—

THE COURT: Did you freely and voluntarily sign your plea agreement after advice of counsel?

MR. BARGER: Yes, sir.

THE COURT: Did anybody mistreat you or force you to do it?

MR. BARGER: No, sir.

THE COURT: Do you understand you're waiving your right to have a jury trial [as to the new law violations]?

MR. BARGER: Yes.

. . . .

THE COURT: All right. And the State and your attorney and you have agreed the most you can get is a seven year cap is what it's called and I'm going to order a presentence investigation for February 5th and determine the appropriate sentence. Do you understand all that?

MR. BARGER: Yes.

MISS TAYLOR [the prosecutor]: And, you Honor, I would like to break it out. The seven year cap would be between both charges since each are third degree felonies so it would be split like four/three or five/two, something to [sic] that nature so it would not be an illegal sentence. It would just be seven years overall.

. . . .

THE COURT: After I read the PSI and all the historical data—you understand a presentence investigation is what PSI is?

MR. BARGER: Yes, sir.

THE COURT: The probation office is going to come to see you and ask you about your education and your family and your social history and your criminal history and all that stuff so I'll have all your history before sentencing.

(Ex. I at 51–53).

The written Plea and Sentencing Agreement set forth the maximum penalties Petitioner faced for each charge, specifically, a five-year maximum for the VOP, a five-year maximum for the felony battery charge, and one-year maximums for the remaining two new charges (violation of a domestic violence injunction and resisting an officer without violence) (Ex. H). The plea agreement provided Petitioner would plea nolo contendere, and adjudication of guilt would be at the discretion of the

court (*id.*). The agreement further provided a presentence report would be ordered, and Petitioner's sentence would be capped at seven years in the DOC with credit for time served (*id.*). Petitioner signed the agreement, certifying that each term had been explained to him by his attorney, and he understood that the sentencing court would incorporate by reference the complete plea agreement (*id.*). By signing the plea agreement, Petitioner also certified that his attorney, the court, and the prosecutor had not made any promises, nor had he relied on any representations as to actual time he would serve in entering the plea agreement if he were incarcerated under the terms of the agreement (*id.*).

At the sentencing hearing on February 5, 2010, defense counsel argued that the crimes were "unsophisticated," and the victim wished to address the court and request a non-prison sentence for Petitioner (Ex. J at 55–56). Defense counsel noted that Petitioner's lengthy criminal history caused him to "score out" to a prison sentence on his Criminal Punishment Code scoresheet, even though the present offenses scored low (*id.* at 56). Defense counsel requested that the court adopt the probation officer's alternative recommendation of no incarceration and a lengthy suspended sentence with community control and placement in a treatment facility (*id.*).

The prosecutor argued Petitioner had three prior misdemeanor batteries, prior felony batteries, three robberies, two grand thefts, and a robbery with no deadly weapon, and he never successfully completed any type of supervision (Ex. J at 57). She argued:

> He is a habitual—he is a violent felony offender of special concern which is a 948.06 section 8 Statute that was enacted under the Anti-murder Act that's classified in the Department of Corrections. The [S]tate does not need to file any type of notice. It's an automatic classification. As the State's spelled out in their letter, this defendant qualifies because he's on felony probation for any offense. He was on felony probation in the 2008 CF 2919 and he has a qualifying offense.
> . . . .
> Both are qualifying offenses to qualify him as a violent felony offender of special concern. Once a defendant is qualified as a violent felony offender of special concern, he must be sentenced to an incarcerative sentence. He cannot be released if the Judge finds that he poses a danger to the community. Looking at his qualifying offenses if this Honorable Court finds that he poses the danger, the Court shall revoke probation and shall sentence this offender up to the statutory maximum. Since we agree to the seven year cap the State would request the seven year cap that we layed [sic] out as follows to make it a legal sentence.

(Ex. J at 57–58). The prosecutor submitted a certified judgment and sentence in Case Nos. 2001-CF-1236 and 2001-CF-1237, which showed Petitioner was previously convicted of robbery without a weapon and attempted robbery (*see* Ex. K).

Defense counsel presented testimony from Petitioner's mother and Miss Gay, the victim of the battery and the violation of a domestic violence injunction (Ex. K at 61–63). Both witnesses requested a non-incarcerative sentence (*id.*). Defense counsel addressed the violent felony offender of special concern issue:

> Your Honor, also another feature of this case has been these prior robberies that we have the paperwork for now, but they're from 1995 and 1996. They don't necessarily reflect who he is now. I think the testimony here better reflects Mr. Barger and that he is amenable to supervision. And obviously if it turns out that he's not, if there's a suspended sentence, then he would be going to prison for some time. It would be up to him to prove that he is amenable to have that opportunity.

(Ex. J at 63–64).

The sentencing judge pronounced the sentence as follows:

> THE COURT: All right. The court adjudges Mr. Barger guilty of the VOPs and the new charges and pursuant to 948.06(8) Florida Statute designates Mr. Barger as a violent felony offender of special concern and as such community supervision is not appropriate. Therefore, in case 09-1949 the judgment is guilty of count one. He's given 60 months in the Department of Corrections. Counts two and three he gets credit for time served. And count—case number 08-2919, count one, he gets 24 months Department of Corrections consecutive to 09 CF 1949 for a total of 84 months. And counts two and three, credit for time served. And in case 08-2919, his probation is terminated and all fines, fees and costs go to collections.
> . . . .
> MR. HAUG: That is with credit for all his time served, your Honor?
>
> THE COURT: Yes, absolutely. He gets credit for anything he's already done.

(Ex. T at 64–65).

Considering the totality of the state court's analysis of the claims asserted in Grounds Two, Three, and Five of Petitioner's federal petition, namely, (1) the trial court's sentencing him as a VFOSC violated the terms of the plea agreement, (2) defense counsel misled him as to the terms of the plea agreement by failing to advise him he would be sentenced as a VFOSC, and (3) defense counsel misstated Petitioner's sentence (doc. 1 at 4–6), the undersigned concludes the state court's

decision constituted an adjudication on the merits of each of those grounds. The decision is thus entitled to deference unless Petitioner demonstrates it was contrary to or an unreasonable application of the clearly established federal law set forth *supra*.

The state circuit court cited <u>Strickland</u> as the standard governing Petitioner's ineffective assistance of counsel claims, which is the correct Supreme Court rule (Ex. T at 135). The court did not cite <u>Santobello</u> or any other Supreme Court precedent in its written analysis of Petitioner's breach-of-plea-agreement claim; however, the court applied the rule set forth in <u>Santobello</u> by determining whether Petitioner's sentence complied with the terms of the plea agreement and, if not, whether Petitioner was entitled to either specific performance or recision of the agreement. With regard to both types of claims, Petitioner has not shown that the state court confronted a set of facts materially indistinguishable from a Supreme Court decision and nevertheless arrived at a result different from Supreme Court precedent. Therefore, Petitioner has not demonstrated he is entitled to federal habeas relief under the "contrary to" provision of § 2254(d)(1).

To determine whether Petitioner is entitled to relief under the "unreasonable application" provision of § 2254(d)(1), the federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The state court's decision could have been supported by the theory that even if the prosecutor's requesting the VFOSC designation and arguing that Petitioner posed a danger to the community and, therefore, the court had no discretion to impose a non-prison sentence, constituted a breach of the plea agreement, removal of the designation, by a different judge, remedied the breach. Fairminded jurists could disagree that this theory is inconsistent with <u>Santobello</u>. Fairminded jurists could conclude that <u>Santobello</u> required the postconviction court to order resentencing, instead of simply ordering the clerk of court to remove the VFOSC designation from

the judgment. However, fairminded jurists could alternatively conclude that removal of the designation by a different judge (the postconviction judge was not the same judge who sentenced Petitioner) fully remedied the breach. Petitioner argued in the postconviction proceedings that the State's alleged breach removed the sentencing court's discretion to impose a non-prison sentence, which is clearly what Petitioner and defense counsel were hoping for by requesting a PSI, presenting mitigating evidence at sentencing, and arguing for a downward departure sentence of community supervision. However, according to Florida law, the VFOSC designation, alone, at Petitioner's sentencing did not remove the sentencing court's discretion to impose a non-prison sentence; rather, the discretion was removed <u>only if the sentencing court took the additional step of making a written finding that Petitioner posed a danger to the community</u>. Fla. Stat. § 948.06(8)(e). The sentencing court in Petitioner's case did not make such a finding, either orally or in writing. Further, the sentencing court's pronouncement of sentence does not suggest that the court believed that a prison sentence was required, only that community supervision was not appropriate (Ex. J at 64). Moreover, there is no indication that Petitioner's sentence calculation was affected by the VFOSC designation.[8] Therefore, by removing the designation from the judgment and sentence, the state postconviction court remedied the breach and fully aligned Petitioner's sentence with Petitioner's understanding of what his sentence would be if he entered the plea agreement, that is, sentencing at the discretion of the court after a pre-sentence investigation, with any term of imprisonment capped at seven (7) years and split between the VOP and the new law violations, and with credit for time served. Additionally, with the removal of the VFOSC designation, Petitioner could not show

---

[8] Petitioner was assessed 12 points under the "Community Sanction Violation" section of his sentencing scoresheet (Ex. L at 39). The applicable sentencing scoresheet statute provides, in pertinent part:

> Community sanction violation points are assessed when a community sanction violation is before the court for sentencing. Six (6) sentence points are assessed for each community sanction violation and each successive community sanction violation, unless any of the following apply:

> 1. If the community sanction violation includes a new felony conviction before the sentencing court, twelve (12) community sanction violation points are assessed for the violation, and for each successive community sanction violation involving a new felony conviction.

Fla. Stat. § 921.0024(1)(b). Therefore, Petitioner was correctly assessed the twelve points regardless of whether he was designated a VFOSC.

he was prejudiced by defense counsel's failure to advise him he could or would be designated a VFOSC at sentencing. Aside from the alleged misadvice concerning the VFOSC designation, Petitioner failed to show that counsel otherwise misadvised him regarding his plea and sentence.

Petitioner failed to demonstrate the state court's adjudication of Grounds Two, Three, and Five was contrary to or an unreasonable application of Santobello or Strickland. Therefore, he failed to demonstrate he is entitled to relief on any of those claims.

C.    Ground Four: "Ineffectiveness [sic] assistance"

      Ground Six: "I.A.C.—failure to advise Defendant of defense"

Petitioner asserts the victim of the battery and the violation of the domestic violence injunction stated that the offenses never occurred (doc. 1 at 5). Petitioner asserts defense counsel failed to investigate this fact and advise Petitioner that he had a viable defense to the charges (*id.* at 5–6).

Respondent concedes Petitioner "appears to have exhausted" his claim that defense counsel was ineffective for failing to investigate his case and seek its dismissal based on the victim's denial of abuse at Petitioner's hand (doc. 12 at 27 & n.11). However, Respondent states, "the State does not waive exhaustion" (*id.* at n.11). Respondent contends the state court correctly held that Petitioner's voluntary plea waived any defense he may have had to the charges (*id.* at 30). Respondent additionally contends defense counsel had no reasonable basis to seek dismissal of the charges, because the victim's denial of abuse was not fatal to the State's case in light of the fact that other witnesses heard the victim cry out for held, heard the defendant strike the victim, and observed Petitioner grab the victim and drag her by her hair (*id.* at 30–31). Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of Strickland (*id.* at 32).

1.    Clearly Established Federal Law

The clearly established federal standard is the Strickland standard, set forth *supra*.

2.    Federal Review of State Court Decision

In Claim VI of Petitioner's Rule 3.850 motion, he asserted defense counsel failed to investigate and advise him of a viable defense (Ex. Q1 at 25–27). He asserted the victim of the

battery and domestic violence injunction violation advised defense counsel and the prosecutor that the allegations were false, and the police report stated the victim told the police officer she was at Petitioner's residence voluntarily and not against her will (*id.*). Petitioner argued if defense counsel had investigated the victim's statements, the case would have been dismissed prior to trial or resulted in an acquittal (*id.*). The state court adjudicated the claim as follows:

> **Ground VI**—The Defendant next argues that his trial attorney erred in failing to have the charges against him dismissed based on the victim's statement that no domestic violence had occurred. By entering the plea, the Defendant specifically waived he [sic] defenses he may have had to the charges. In addition, although the victim denied any abuse had taken place, the arrest report contradicts her statement.[FN 7: Exhibit C]
>
> According to the report, three witnesses saw the Defendant grab the victim and drag her by her hair. Although the victim had a laceration to her foot and knees which required treatment, she denied any abuse. Since the victim's statement was not essential to the State's case, this claim is denied without an evidentiary hearing.

(Ex. T at 137). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

At the plea hearing, defense counsel announced to the court that the victim of two of the new law violations (battery and violation of an injunction for protection against domestic violence) requested that the charges be dropped (Ex. I at 47). The prosecutor responded that the State would proceed with all charges despite the victim's desire, because the State had ample evidence to support a conviction even without the victim's cooperation, including testimony of three eyewitnesses, photographs, a 911 call, and testimony of police officers (*id.* at 48).

The probable cause affidavit included in the arrest reported stated, in relevant part:

> On 09/26/2009, I [Officer J. O'Dell] had been dispatched to the residence of 339 SE Elliott Rd. concerning a Domestic Violence (DOMV) battery.
>
> The defendant, Mr. Barger, and victim are in a relationship. There is a protective injunction in place for the victim against the defendant.
>
> Three witnesses who were outside heard yelling and screaming emitting from inside of the defendant's residence.
>
> The witnesses observed the defendant and the victim come out of the front door of

the residence. The witnesses heard the victim cry out for help and heard the defendant strike the victim. The witnesses observed the defendant intentionally grab the victim's hair and drag her back inside of the residence.

I, Cpl. Van Schmidt and Sgt. Findley repeatedly knocked loudly on the front and rear door several times while announcing ourselves, but nobody answered either door. There was no sound emitting from inside of the residence. The PD special Response Team arrived on the scene and forced open the front door. The defendant and victim were located in the southwest bedroom inside of the residence.

The victim had a laceration to the bottom of her foot. I discovered blood throughout the inside of the residence from the victim's wound that she alleged happened when she stepped upon a piece of broken glass.

(Ex. E).

The evidence referenced in the police report satisfied the elements of battery and violation of a domestic violence injunction outlined *supra* in Ground One. Further, statements by the victim that she was at Petitioner's residence voluntarily and not against her will, and denying that the events occurred would not have constituted a defense to the crimes; rather, her statements simply would have created a credibility issue for a jury to resolve (that is, whether the victim was more believable than the three eyewitnesses who advised law enforcement that they saw Petitioner grab the victim's hair and drag her). Petitioner failed to show that counsel's failure to further investigate the victim's side of the story or failure to seek dismissal of the charges was unreasonable. Therefore, the state court did not unreasonably apply Strickland in denying the claims asserted in Grounds Four and Six.

D.      Ground Seven:  "Trial court error on pro se motion to withdraw plea."

Petitioner does not allege any facts in support of this ground (doc. 1 at 6). Respondent did not address this ground (*see* doc. 12).

In Claim V of Petitioner's Rule 3.850 motion, he alleged that on January 13, 2010, between entry of his plea on December 29, 2009, and sentencing on February 5, 2010, he filed a pro se motion to withdraw his plea on the ground that defense counsel misadvised him during the plea process (Ex. Q1 at 22–25). Petitioner argued the trial court erred by failing to conduct a hearing on the motion to withdraw his plea and appoint "conflict-free" counsel (*id.*).

The state circuit court adjudicated the claim as follows:

>    **Ground V**—The Defendant claims that the Court erred in not appointing another attorney to represent him when he filed a pro se motion to withdraw his plea prior to sentencing on January 13, 2010. The Court can find no evidence in the record that the Defendant ever filed a motion to withdraw his plea. Even, however, if he had moved to withdraw his plea, the Court finds that there was no basis to grant such a motion.
>
>    Under [R]ule 3.170(f), the trial court may, in its discretion, and shall, on good cause, at any time before sentencing, permit a plea of guilty or no contest to be withdrawn. Because the Defendant cannot show that he had "good cause" to withdraw his plea, his motion would have been denied. This claim is without merit and is denied without the need for an evidentiary hearing.

(Ex. T at 137). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

Initially, Petitioner has not stated a cognizable federal habeas claim. It is well established that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting Carrizales, *supra*).

State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." Tejada, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." Estelle, 502 U.S. at 352.

In the instant case, Petitioner failed to show he actually filed a motion to withdraw his plea prior to sentencing, nor is there any evidence he expressed a desire to withdraw his plea at any time prior to sentencing.[9] Therefore, he failed to show any trial court error, let alone error of constitutional dimension. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Seven.

## IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael D. Crews is

---

[9] The court takes judicial notice of information available on the database maintained by the Clerk of the Circuit Court, 1st Judicial Circuit, Okaloosa County, Florida, viewed January 10, 2013, http://www.clerkofcourts.cc/, which indicates no documents were filed in Case No. 2008-CF-2919 or Case No. 2009-CF-1949 between December 29, 2009 and February 5, 2010. See Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); see also Mangiafico. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

substituted for Kenneth S. Tucker as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 11<u>th</u> day of January 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

      **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**